## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**MELISSA N. RAYBORN**                                                                    **PLAINTIFF**

**v.**                                                             **CASE NO.** __1:22cv247 TBM-RPM__

**JACKSON COUNTY SCHOOL DISTRICT**
**(JACKSON COUNTY SCHOOL BOARD);**
**SUPERINTENDENT JOHN D. STRYCKER,**
**in his individual capacity and official capacity**
**as agent of the Jackson County School District**;
**UNKNOWN ENTITES 1 – 10; and JOHN**
**DOES 1 – 10**                                                                         **DEFENDANTS**

## PLAINTIFF'S COMPLAINT
### (*Jury Trial Requested*)

Plaintiff, Melissa N. Rayborn, by and through counsel, files this Complaint against Defendants, Jackson County School District; Superintendent John D. Strycker, in his individual capacity and as agent of the Jackson County School District; Unknown Entities 1 – 10; and John Does 1 - 10. Plaintiff brings this action based on Defendants' violations of her First and Fourteenth Amendment rights guaranteed by the United States and Title 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and Defendants' conspiracy under Title 42 U.S.C. §§ 1985(3) and 1986.

Particularly, Ms. Rayborn's claims include the following:

(1)     Constructive discharge and/or constructive termination;

(2)     Gender and religious discrimination in violation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution, the Civil Rights Act of 1967, Title 42 USC § 1983 and Title VII, 42 U.S.C. § 2000e *et seq.*;

(3)     Age discrimination in violation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*;

(4)     Retaliation under the Civil Rights Act of 1967, Title 42 USC § 1983, Title VII, 42 U.S.C. § 2000e *et seq.*; and the Age Discrimination in Employment Act (ADEA) of 1967 § 15, 29 U.S.C. § 621 *et seq*., in particularly § 633a(a);

(5)     Hostile environment under Title 42 USC § 1983, Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA) of 1967 § 2 *et seq.*, 29 U.S.C. § 621 *et seq.*;

(6)     Violation of the right to equal protection under the Fourteenth Amendment of the United States and Title 42 U.S.C. § 1983;

(7)     Violation of the right to free speech under the First Amendment of the U.S. Constitution;

(8)     Violation of the right to be free from retaliation under the First Amendment of the U.S. Constitution and Title 42 USC § 1983, Title VII, 42 U.S.C. § 2000e *et seq.* and the Age Discriminationin Employment Act (ADEA) of 1967 §§ 15, 29 U.S.C. § 621 *et seq*., in particularly § 633a(a);

(9)     Conspiracy under Title 42 U.S.C. §§ 1985(3) and 1986.

In support of these claims, Plaintiff states as follows:

## I.     PARTIES

### A.     The Plaintiff

1.     Plaintiff, Melissa N. Rayborn ("Plaintiff" or "Melissa"), is an adult resident citizen of Jackson County, Mississippi. Plaintiff was employed by the Jackson County School District as the executive secretary for Defendant, Superintendent John D. Strycker, from January 2020 until July 2, 2021.

### B.     The Defendants

2.     Defendant Jackson County School District ("the District") is a political subdivision of the State of Mississippi. It may be served with process by personally delivering a copy of this Complaint and a summons to Superintendent, John D. Strycker, at 4700 Colonel Vickrey Road, Vancleave, Mississippi 39565 or such other location where he may be found. The Jackson County School District may also be served with process by personally delivering a copy of this Complaint

and a summons to Jason Keith Lee, Chairman of the Jackson County School Board at 6400 Dove Lane, Ocean Springs 39564.

3.      Defendant John D. Strycker ("Strycker") is an adult resident citizen of Jackson County, Mississippi and may be served with process by delivering this Complaint and a summons to him at 4700 Colonel Vickrey Road, Vancleave, Mississippi or such other location where he may be found.

4.      Defendants John Does and Jane Does 1-10 are individuals whose true names and addresses are unknown to Plaintiff at present. They are agents, representatives, employees, and/or individual Jackson County School District Board members who acted at the direction of and in concert with Defendants and whose conduct subjects them to individual liability under federal law.

5.      Defendants Unknown Entities 1-10 are entities whose true names and addresses are unknown to Plaintiff at present. They are corporations or other entities that acted in concert with Defendants and are "alter egos" that caused or contributed to Plaintiff's damages as set-forth herein.

## C.     Place of Employment

6.      During the relevant period, Melissa was employed by Jackson County School District. She worked in the central office located at 4700 Colonel Vickrey Road, Vancleave, Mississippi 39565. Prior to her constructive discharge, she had been a dedicated employee of the Jackson County School District for nearly eight years, serving in various roles. She lacked only about six weeks to be fully invested in the Public Employee Retirement System (PERS) when she was constructively terminated and discharged.

## II.       BASIS FOR JURISDICTION AND VENUE

7.       This Court has jurisdiction of the parties, subject matter, and this action brought as the result of discrimination in employment, specifically: (1) gender and religious discrimination pursuant to Title VII of the Civil Rights Act of 1964, as codified, 2 U.S.C. §§ 2000e *et seq.*; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"), as codified, 29 U.S.C. §§ 621 *et seq.*; (3) retaliation and hostile work environment under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discriminationin Employment Act (ADEA) of 1967 §§ 2, 15 and 29 U.S.C. § 621; (4) violation of the right to equal protection under the Fourteenth Amendment of the United States; (5) violation of the right to free speech under the First Amendment of the U.S. Constitution; (6) violation of the right to be free from retaliation under the First Amendment of the U.S. Constitution; Title 42 USC § 1983, Title VII, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment (ADEA) of 1967 §§ 15, 29 U.S.C. § 621 *et seq.*, in particularly § 633a(a); and (7) conspiracy under Title 42 U.S.C. §§ 1985(3) and 1986.

8.       Venue is proper in this district and division pursuant to 42 U.S.C. § 1391 because it is the judicial district in which Defendants reside and where a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because it is in the judicial district in which the unlawful employment practices have been committed.

## III.       FACTUAL BACKGROUND

### A.       Plaintiff's Employment with the Jackson County School District

9.       Melissa was a dedicated employee of the District for nearly eight years until her constructive discharge.

10.       During Melissa's employment with the District, she served in various positions.

11.     At some point, Melissa became the executive secretary for the Superintendent and the 16th Section Land Clerk/Manager, working under the District's attorney.

12.     Around 2017 or 2018, Melissa was also assigned to the position of secretary to the Jackson County School Board ("the Board").

13.     Jack Pickett, the attorney for the Board, supervised Melissa in her role as 16th Section Land Clerk.

14.     Melissa worked as the Executive Secretary for Superintendent Strycker upon his arrival in January 2020.

15.     Melissa was also required to work with James Keith ("Keith"), outside counsel for Strycker and the District, on personnel and other matters, including terminating employees by "load[ing] up on the witnesses who 'may' testify" against them and letting the employee "know the deck is stacked against him."

16.     After being subjected to religious, gender, and age discrimination and a retaliatory and hostile work environment from on or about January 2020 to July 2021, Melissa felt compelled to resign.

17.     Melissa lacked about six weeks to be fully invested in the Public Employee Retirement System (PERS) when she was constructively terminated and discharged.

**B.     The District's Negligent Hiring of Defendant John N. Strycker as Superintendent of Jackson County School District**

18.     In or about September 2019, the Jackson County School Board ("the Board) and the District (being the political subdivision for the Board) contracted with Strycker, giving him Czar-like powers to run the District and its employees.[1] *See* Jackson County School District

---

[1]References to the Board and the District are used interchangeably throughout this Complaint.

Contract for Employment of Superintendent (signed September 11, 2019) (effective January 1, 2020), Ex. 1 [Bates No. 58 – 65].

19.     When the District/Board contracted with Strycker, it knew or should have known of Strycker's history and propensity to discriminate in the workplace.

20.     When the contract was formed, Strycker was employed as superintendent of Butler County School District in Alabama.

21.      Numerous claims were made regarding Strycker's discriminatory conduct during his employment there.

22.     As a result, Strycker was forced to resign as superintendent in Alabama only after two years and prior to the end of his contract.

23.     Even so, the District entered into a contract of employment with Strycker, employing him as superintendent of the Jackson County School District for three school years, effective January 1, 2020. Contract, Ex. 1 [Bates No. 58 – 65].

24.     Under the contract, the District agreed to hold Strycker harmless *in both his individual and official capacities* and indemnify him for his wrongful conduct occurring within the course and scope of his employment.  Contract, at 7, (¶ 19), Ex. 1 [Bates No. 64].

25.     The District agreed to indemnify Strycker regardless of whether he acted negligently or recklessly with a total disregard for the rights of others, and even if punitive damages were assessed.

26.     Upon hiring Strycker, the Board became aware of Strycker's plan to replace older employees with younger ones.

27.     The Board and the District approved of and supported Strycker's plan modeled after the book entitled, *Good to Great*.

28.     The Board and the District approved of and actively assisted in carrying out Strycker's plan and turned a blind eye to his harassing, abusive, hostile, retaliatory, and discriminatory conduct.

29.     The Board and the District allowed Strycker to set up a hostile and discriminatory environment toward older women and their religious beliefs. Individual board members witnessed some of Strycker's outbursts and did nothing.

30.     Strycker verbalized his feelings, opinion, and attitude in an audio recording, stating:

**The point I make with all those f\*\*\*ing Baptist in my office, you know what Penny** [Melissa's co-worker]**, I say f\*\*\*. You know what Melissa, you can suck my balls, Melissa. F\*\*\* you, you f\*\*\*ing Baptist. Take this to your Church. No, take this to your Church. I don't give a f\*\*\*.**

Attached as Exhibit "4" is a copy of the audio recording.

**C.     Religious Discrimination**

31.     Upon Strycker's arrival in January 2020, Melissa began working as Strycker's executive secretary in addition to serving in her other roles as secretary to the Board and 16th Section Land Clerk.

32.     From the beginning of Strycker's reign, he used profane, humiliating, and offensive language in the workplace, including use of the "f" word frequently.

33.     Melissa asked Strycker not to use such language in her presence.

34.     However, Strycker's use of profane, humiliating, and offensive language continued and intensified. Melissa's religion appeared to bother Strycker. He did not like that Melissa held him accountable for his language about and description of people of faith and his use of profane and demeaning language, which was in direct violation of the code of ethics for educators and school policy.

35.     For example, Strycker hung a shirt in his office with the following words on it: "I love Jesus, but I say F." The shirt was hung for all to see, including students who came in his office. A student interview was posted on the school's website that captured the shirt with its words blazing in the background. Complaints were lodged about the obscene and offensive spectacle.

36.     Strycker also proudly displayed a "F" bomb paperweight on his desk for all to see.

37.     Strycker argued that, because Jesus was a carpenter, he was sure that Jesus had screamed the "F" word after hitting His thumb with a hammer.

38.     Strycker directed vulgar language toward Melissa and about her.

39.     Melissa approached Strycker on numerous occasions about his using profanity and inappropriate language in the office and language demeaning and ridiculing her religion and religious beliefs.

40.     Strycker often remarked, "Why are Baptists so sensitive?" He referred to people of faith as weak.

41.     Strycker even used the "f" word in the presence of Melissa's then thirteen-year-old daughter.

42.     Strycker criticized Dr. Barry Amacker, the former superintendent, for taking the time to pray about certain matters instead of making quick decisions. *See* Charge Letter from Melissa to EEOC at 6, Ex. 1 ("A") [Bates No. 6]. Strycker said, "Amacker is a weak man, can't make his own decisions, and has to rely on GOD to make the decisions for him.  Or oh wait, should I go pray about it like Amacker . . . ."

43.     Strycker continually expressed ridicule of and contempt for Melissa's religion. For example, one rainy day, Strycker said, "If God is f****ing all knowing then is he stupid . . . because if he's all knowing why can he not figure out that we've had enough rain already." *See* Letter of

Resignation from Melissa to Board at 2 (June 20, 2021) [Bates No. 11] & Aff. Melissa Rayborn (Oct. 1, 2021) (verifying statement in letter of resignation), Ex. 2.

44.     Another time, when the weather was so bad and things were going wrong, Strycker stated that God must have a rod up His ass.

45.     Melissa felt that Strycker took great pride and pleasure in routinely and continually insulting her religious beliefs.

46.     Strycker created a hostile environment through his use of foul, vulgar and profane language directed toward and about Melissa and his insults about her faith. He was consistently, routinely, and continually crude, ridiculing, and insulting of religious beliefs that reasonably offended and bothered Melissa greatly.

**D.     Gender and Age Discrimination**

- **Gender Discrimination**

47.     Strycker's humiliating, ridiculing, offensive, and crude comments were not only directed to and about Melissa and people of faith in general, but also toward females, including Melissa.

48.     Strycker degraded and ridiculed the females in the office and directed demeaning, offensive, and/or profane language toward and about them.

49.     While going through his divorce, Strycker told Melissa that women are like trophies, he goes out to catch them because he is very competitive, and once he wins them, he just puts them on a shelf while he goes out to catch another.

50.     Strycker treated females differently, especially Melissa because of her role as his secretary.

51.     Strycker expected Melissa to tolerate it because, according to Strycker, she was "his work spouse." Charge Letter from Melissa to EEOC at 3 (Nov. 24, 2021), Ex. 1 [Bates No. 3].[2]

52.     Melissa was a prime target of Strycker's hostility and disdain.

53.     Strycker verbalized his feelings, opinion, and attitude in an audio recording toward women and Baptists in "his" office, particularly Melissa, stating:

> **The point I make with all those f\*\*\*ing Baptist in my office, you know what Penny** [Melissa's co-worker]**, I say f\*\*\*. You know what Melissa, you can suck my balls, Melissa. F\*\*\* you, you f\*\*\*ing Baptist. Take this to your Church. No, take this to your Church. I don't give a f\*\*\*.**

Audio Recording, Ex. 4.

54.     In addition to working her regular daytime hours, Strycker required Melissa to work many nights and weekends.

55.     Melissa requested that she *not* be required to work so many nights and weekends.

56.     Melissa expressed to Strycker her need to spend more time after working hours with her family, including her children, ages thirteen (13) and seventeen (17) at the time, and her mom, who contracted Covid and was hospitalized in intensive care and ultimately died.

57.     Strycker ridiculed and degraded Melissa in response to her care and concern for her family.

58.     Strycker told Melissa that her "f\*\*\*ing children don't matter to him."

59.     Strycker even made a negative comment on Melissa's performance evaluation about her focus being more on how her job impacted her personally. Performance Evaluation Sheet (Jan. 4, 2021), Ex. 1 ("C") [Bates No. 17]. Strycker later informed Melissa that she had to get over her "motherhood" phase if she wanted a better rating.

---

[2]Melissa requested and was given her right to sue letter on June 16, 2022. *See* Ex. 3.

60.     Strycker continued to use very insulting, offensive language around and to Melissa relating to the female anatomy, motherhood, work spouse, and other matters that were very belittling to Melissa and females in general.

- **Age Discrimination**

61.     Strycker refused to allow Melissa the same opportunities given to younger employees and new hires.

62.     Strycker made comments about his plans to hire younger employees before he left the District because, according to him, "only they could handle this new generation." His plans were premised on the book, *Good to Great*, which the District/Board approved and supported.

63.     In keeping with Strycker and the District/Board's plan, Strycker gave the younger employees more money than seasoned employees, including Melissa.

64.     Melissa asked Strycker for a raise several times, but he merely told her, "Talk to the Board."

65.     The younger employees and new hires were given higher pay for the same work with even less responsibilities.

66.     Strycker offered Melissa a job making $10,000 more a year *but with too many duties for one person to handle*. Melissa declined because she knew no one person could accomplish all the tasks involved. However, Strycker then offered a younger person the same position/title for *$30,000 to $40,000 more a year than offered to Melissa **and with less duties, tasks, and responsibilities***. The younger person also had less qualifications than Melissa.

67.     Strycker also replaced female employees in leadership positions with men. With the Board's approval, Strycker replaced the only two female assistant superintendents with younger males.

68.     Dr. Susan Benson was the assistant superintendent of St. Martin Attendance Center. Strycker replaced her with David Bagget, a younger male. Dr. Benson filed a complaint with the EEOC.

69.     Mary Tanner had been the assistant superintendent of East Central Attendance Center for seven (7) years. Strycker replaced her with Todd Boucher, a younger male, with little experience as an assistant superintendent.

70.     Ms. Tanner filed an EEOC complaint and lawsuits in federal and state court.

71.     Strycker's treatment of Mary Tanner, Dr. Susan Benson, and others added to Melissa's stress. Melissa was greatly disturbed by it. It was unbearable for her to witness.

72.     For example, Melissa and others heard Strycker complain about Ms. Tanner, stating: "[I]s F****ING MARY TANNER SMOKING CRACK, HAS SHE GOT DRUG BRAIN"? *See* Melissa's Letter of Resignation to Board attached.

73.     Melissa was troubled by Strycker's directing others in the office not to assist Ms. Tanner.

74.     Melissa's letter of resignation states that Strycker "has got an entire office refusing to help [Mary] and jointly they are smiling about the abuse. . . . The entire office is unwilling to help Mrs. Tanner and frankly seem to pride themselves in NOT helping . . . ." Letter of Resignation, Ex. 1 ("A") [Bates No. 12 – 13]. The hostile environment was unbearable. *Id.* (Melissa stated that she cannot work another day in the hostile environment that she was having to endure.) [Bates No. 10].

75.     Another example of the discriminatory and hostile environment perpetuated by Strycker is his treatment of Dr. Susan Benson.

76.     Strycker was very critical of Dr. Susan Benson.

77.     Strycker often remarked, "F***ing Susan Benson—is she f***ing stupid?". *Id.* [Bates No. 10].

78.     Strycker discussed with others in central office and attorneys about how to remove Dr. Benson from her position as assistant superintendent of St. Martin schools.

79.     Strycker shared Dr. Benson's confidential personnel information with others who should *not* have been privy to such information.

80.     Strycker inappropriately and openly discussed his beliefs with others in central office about Dr. Benson's shortcomings and, according to him, her "f**ing stupidity."

81.     Yet another example of Strycker's discriminatory conduct is his treatment of Human Resources Director Laura McCool.

82.     With the Board's approval, Strycker stripped Ms. McCool of most of her duties and gave them to a younger female.

83.     Ms. McCool also filed a complaint with the EEOC.

84.     Ms. McCool wanted to complete her twenty-five years of service, but ultimately retired on September 1, 2022.

85.     Ms. McCool retired because of Strycker's continued humiliation of her and Strycker and the District's violations of her rights, and the continued toll it had on her health.

86.     These are just some of the examples of the widespread discriminatory conduct. *See* Letter of Resignation from Melissa to Board at 2 (June 20, 2021) [Bates No. 11] & Aff. Melissa Rayborn (Oct. 1, 2021) (verifying Melissa's statements in letter of resignation), Ex. 2.; Charge Letter from Melissa to EEOC (detailing the abusive, harassing, hostile, retaliatory, and discriminatory work environment), Ex. 1.

**E.    Negligent Supervision and the District's Knowledge of the Widespread Discriminatory Conduct, and the District's Direct Participation in and/or Allowance of the Discriminatory Conduct, Retaliation, and Hostile and Harassing Environment**

87.    The Board assisted Strycker in carrying out the plan to replace older employees with younger males and otherwise turned a blind eye to Strycker's harassing, abusive, hostile, retaliatory conduct.

88.    The Board was on notice of Strycker's prior discriminatory conduct and even supported and participated in the discriminatory conduct.

89.    Prior to Melissa's letter of resignation, the Board had knowledge of Strycker's harassing, hostile and discriminatory conduct.

90.    Prior to her letter of resignation, Melissa reached out and complained of Strycker's wrongful conduct to (1) Board Member Amy Dobson in November 2020, (2) Board Member Glenn Dickerson in January 2021 and on May 27, 2021 (3) Associate Human Resources Director Christy LeBatard on May 19, 2021; (4) Human Resources Director Laura McCool; and (5) Jack Pickett, attorney for Board and who is listed by Melissa as a witness. *See* Melissa's Charge Letter to EEOC, Ex. 1 ("D" – "G") [Bates No. 18 – 48] (text messages showing that Dobson, Dickerson, LeBatard, and McCool were made aware of the hostile environment and/or acknowledged it).

91.    The Board/District approved Strycker's disdainful, abusive, harassing, hostile and discriminatory conduct.

92.    The Board/District further failed to do anything to stop Strycker's disdainful, abusive, harassing, hostile and discriminatory conduct.

93.    In November 2020, Melissa reached out to Board Member Amy Dobson ("Dobson") about Strycker's wrongful conduct. Charge Letter from Melissa to EEOC at 5, Ex. 1 [Bates No. 5].

94.     Thereafter, Strycker's slanderous, disdainful, extreme, and outrageous conduct only worsened. *Id.*

95.     In January 2021, Melissa reached out to Board Member Glenn Dickerson ("Dickerson") and informed him of Strycker's mistreatment of her and others; the hostile work environment created and perpetuated by Strycker; her concerns for the District due to Strycker's mistreatment of employees; and Strycker's total disregard for state and local policies. *Id.*

96.     Melissa reached out to Dickerson again on May 7, 2021, after Strycker told her that her "f***ing" children did not matter to him in response to her request that her children's events be considered when he scheduled *last minute, after-hour* meetings. *Id.*

97.     Strycker told Melissa to find another job if she was more interested in taking her kids to their doctor's appointments and/or attending their evening events and that "motherhood" was not an acceptable time to be a success under his leadership. *Id.*

98.     Melissa "was overwhelmed with anxiety, fear, and frustration because of his [Strycker's] cruel response and his rageful outburst"; she "had been trying so hard, daily, to navigate the environment," which was affecting her physical/mental and emotional health. *Id.*

99.     She was "trying to continue working" and her "goal was to just survive" until she was fully vested in the state's retirement plan. *Id.*

100.    Melissa reached out again to Board Member Dobson regarding her frustration with Strycker's "continued discrimination." *Id.* at 4.

101.    Instead of taking action against Strycker, Dobson asked Melissa, "Have you asked Dr [sic] Strycker to consider another transfer where you [Melissa] may feel more comfortable?" Text from Dobson to Melissa (June 11, 2021), Ex. 1 ("D") [Bates No. 19].

102.    Dobson also replied that she had hoped Melissa would have taken another job that Strycker had offered to her. *Id.*

103.    However, that newly created position (Assistant Resources Director), was in addition to Melissa's role as 16th Section Land Clerk. Charge Letter from Melissa to EEOC at 4, Ex. 1 [Bates No. 4].

104.    As part of the newly created position, Melissa would have been required to also take on a third role of managing employee benefits, which was another employee's job.

105.    Melissa declined that offer because it was too much for any one person to handle. *Id.*

106.    Thereafter, the District hired an employee, *paying that employee $30,000.00 to $40,000.00 more a year than offered to Melissa*. *Id.*

107.    The District did *not* require that employee to also take on the role of 16th Section Land Clerk and the task of managing employee benefits. *Id.*

108.    Further, unlike what was offered to Melissa, that employee was allowed access to a team of at least four other employees for assistance in performing the job duties. *Id.*

109.    Upper management in the central office also had knowledge of the hostile environment.

110.    Laura McCool, Human Resources Director, even admitted in writing that Melissa and Mary Tanner, another employee, "have had a hostile work environment more than anyone else." Text from McCool to Melissa (June 28, 2021), Ex. 1 ("G") [Bates No. 30].

111.    In addition to being informed by Melissa, Christy LeBatard, Associate Human Resources Director, witnessed Strycker's outbursts, his profane, derogatory, and degrading

language toward her and other female employees. Charge Letter from Melissa to EEOC at 6, Ex. 1 [Bates No. 6].

112. *Incredibly, to date, the Board has done nothing to stop Strycker's persistent, wrongful conductand/or prevent the widespread discriminatory and retaliatory conduct and the harassing and hostile environment.*

113. Moreover, the Board has approved, assisted, and participated in the wrongful conduct.

114. The Board's and Strycker's wrongful conduct violated the Mississippi Educator Code of Ethics, the District's policy regarding Equal Employment Opportunity, and the prohibition of harassment. *See* Ex. 1 ("H") [Bates No. 49 – 57].

115. The District's contract with Strycker allows it to terminate Strycker based on the wrongful conduct set forth herein. Ex. 1 [Bates No. 61 – 63]. However, the Board has refused to do anything to stop Strycker's wrongful conduct in direct contravention to federal laws, regulations, and the District's policies.

116. Melissa's own words in her EEOC Charge Letter describes the District's knowledge of the widespread discriminatory and retaliatory conduct and its failure to act:

> I was an excellent employee, as stated in my performance evaluation, but he [Strycker] knew he couldn't control me as a woman, as a mom and as a Christian and he knew I would be counterproductive to his agendas. I wasn't out to "GET HIM FIRED" I was out to get help from every level of administration that was supposed to be there to help the employees in the district. **I went to our Human Resource Managers, as reflected in the text messages attached, I went to board members as reflected in my text messages, I went to our board attorney, Jack Pickett, Esq., who would testify as such as well as his staff, and then I went to the state ethics commission, the state auditor's office and to the MS Department of Education. At no level did anyone try to help me. The district only tried to quieten me with threats against my ability to be employee and mom, threats that I would be unsuccessful under the superintendent's leadership, and the district tried to help me find a job elsewhere to get me out.** The district has failed me in that they never stepped up to investigate, they never

worked to correct the discriminatory actions by the superintendent and to date, the district has continued to allow these tactics upon other employees, most of which have also filed EEOC claims with this department as well as other legal proceedings. Dr. Susan Benson has filed an EEOC claim against the superintendent, Mary Tanner has filed and EEOC claim against the superintendent as well as several other litigation matters against the district and school board and Laura McCool has filed two EEOC claims against the superintendent, but withdrew one out of fear of retaliation after having witnessed the treatment of Mrs. Tanner after filing her claims.

Because of the refusal of the leadership in our district and in our state, I felt I had no choice but to leave my employment with the district, because my mental/emotional health was failing, my fear of him had become debilitating and my overall health was being affected. Many office personnel were witness to my emotional breakdowns following harsh and discriminatory treatment by the superintendent, and because my ability to perform my functions as a mom were being challenged. I continued working hard for the district, but I lived in a state of fight or flight each day. I kept trying to endure the harsh days to reach my vesting with the state, but he won. My mental/emotional strength failed me, and I could no longer endure the daily exposure to the toxic environment created by the superintendent against my GOD, against myself as a woman "his work spouse" and mom "motherhood phase", and I had witnessed firsthand his agenda of replacing his older female staff members with younger employees that he had stated could better advance the district by employing those he felt would be more able to deal with the rise of millennial parents and employees.

Melissa's EEOC Charge Letter at 7 – 8 (emphasis added), Ex. 1 [Bates No. 7 – 8].

## F.   Retaliation, Hostile and Harassing Environment and Violation of the Right to Free Speech under the First Amendment of the U.S. Constitution

117.   Strycker retaliated against Melissa after she complained that Strycker and the Jackson County School Board were in violation of the governor's mandate and the state's guidelines regarding Covid.

118.   On or about March 3, 2020, Melissa's physician advised her that, given her medical history, she was more susceptible to contracting Covid and/or at greater risk should she contract it.

119.   Melissa informed Strycker of her physician's concern and her concerns that the governor's Covid mandates and state guidelines were not being followed.

120.    In or about May 2020, someone in the office was exposed to Covid. Therefore, Melissa informed Strycker that she would need to work from home.

121.    For about month, Melissa worked from home, never missing a deadline or required meeting.

122.    Melissa went to the office at night and completed any tasks that she could *not* do at home, such as making copies and mailing.

123.    Melissa worked from home until around June 2020, when Strycker required all employees to return to the workplace.

124.    Upon Melissa's return, the governor's Covid mandates were again *not* followed, such as required mask-wearing and limitations on indoor gatherings.

125.    Strycker ridiculed Melissa and other employees who attempted to follow the governor's mandates and our state's guidelines regarding Covid. He referred to such employees as weak and ridiculous.

126.    Strycker's mistreatment of her intensified after Melissa spoke out about the Covid mandates and proper protocols not being followed.

127.    Strycker also retaliated against Melissa after she complained of his offensive, ridiculing, insulting, demeaning, and discriminatory conduct.

128.    After Melissa reported Strycker's wrongful conduct to the Board members, Strycker angrily came into Melissa's office, closed the door, leaned in close to Melissa and said, in a threatening tone, that someone had reported his use of profanity in the workplace to the Board.

129.    Then, in a Thursday Administration Team Meeting, Strycker told the thirty plus team members the same—in a manner that Melissa felt was ridiculing and threatening her in a passive-aggressive way.

130.    Melissa began to constantly feel threatened at work.

131.    Strycker shouted profanity at Melissa.

132.    Strycker referred to Melissa in degrading, demeaning, insulting offensive and/or profane terms.

**G.    Conspiracy Regarding Gender and Age Discrimination**

133.    Melissa reached out and complained of Strycker's wrongful and discriminatory conduct to Board Member Dobson, (2) Board Member Dickerson (3) Associate Human Resources Director LeBatard and others as set forth above. Melissa's EEOC Charge Letter at 7 – 8 (emphasis added), Ex. 1 [Bates No. 7 – 8].

134.    However, the District/Board failed to enforce rules and regulations consistent with federal law.

135.    Because Melissa spoke out about Strycker's and the Board/District's wrongful and discriminatory conduct, Strycker and the Board conspired to get rid of Melissa.

136.    Board members Dobson and Dickerson along with LeBatard in the Human Resources Department encouraged Melissa to find employment elsewhere. They even assisted in the employment search.

137.    The District/Board did so to assist Strycker in carrying out his plan to constructively discharge and terminate Melissa. *See* Charge Letter from Melissa to EEOC, Ex. 1.

138.    Under the guise of trying to help Melissa find other employment, the Board and upper management assisted Strycker in carrying out their goal of forcing Melissa to resign *Id.*

139.    The District/Board assisted in carrying out Strycker's plan to replace older employees with younger males and otherwise turned a blind eye to Strycker's harassing, abusive, hostile, retaliatory conduct and allowed it to continue.

## H.      Constructive Discharge

140.     As the days, weeks, and months went by, Melissa found that the discriminatory, retaliatory, and hostile work environment was taking a toll on her physical and mental health.

141.     The conversations with Strycker and Keith about terminating targeted employees *and Strycker's resulting actions* added to Melissa's stress, anxiety, and fear.

142.     Melissa witnessed Strycker's mistreatment of other targeted employees, forcing them to resign or retire through means of (1) lodging false charges against the targeted employees; (2) "loading up on witnesses" to testify against the targeted employees (even implying that the employees who would bear false witness against the targeted employees would be given raises); and (3) overloading the targeted employees with work and instructing other employees not to assist them.

143.     Witnessing the mistreatment of other targeted employees greatly contributed to Melissa's stress, anxiety, and fear.

144.     Melissa suffered under Strycker's Board-sanctioned reign of terror from January 2020 until July 2, 2021, when she was forced to resign (constructively discharged) due to the retaliatory, harassing, hostile and discriminatory work environment. *See* Letter of Resignation from Melissa to the Board, Ex. 1 ("A") [Bates No. 10 – 14].

145.     The District/Board and Strycker made working conditions so intolerable and unbearable that Melissa was reasonably compelled to resign.

146.     Melissa lacked about six weeks to be fully invested in the Public Employee Retirement System (PERS), one of the best systems in the country when she was constructively terminated and discharged.

147.    In Melissa's attached letter of forced resignation, she again informs the Board of Strycker's discriminatory, retaliatory conduct and the hostile and harassing environment, including his wrongful conduct.

148.    Melissa's letter documents just some of the events constituting the harassing, abusive, hostile, retaliatory, and discriminatory work environment created and perpetuated by Strycker.

149.    In her letter of resignation, Melissa put in writing what she had been telling certain Board members.

150.    Melissa repeats how she is disrespected daily by Strycker and that she and her health cannot take it anymore.

151.    Melissa states, "From early on Dr. Strycker has shown himself to be quite rageful, quick to snap and downright cruel." Letter of Resignation at 1, Ex. 1 ("A") [Bates No. 10].

152.    Melissa informs the Board that she knows that Strycker has shared what he thinks about employees and confidential personnel matters with the Board in emails and conversations.

153.    As a result of such communications, Melissa states that an "employee has no way to have a fair, impartial jury of board members should they ever require a board hearing. The board can't be impartial if they are provided the one-sided facts before the hearing takes place." *Id.*

154.    Melissa again describes to the Board Strycker's profane language directed at and about female employees. *Id.*

155.     For example, she describes how Strycker called her on the weekends, and on one such occasion asked "what the f**k" she was doing and if she was avoiding his calls. She describes Strycker's profanity used in front of employees and about female employees, repeating the word "f**king p***y in a staff meeting and referring to female employees as "f**king idiots." *Id.*

156.    Strycker's treatment of others added to Melissa's stress. She was greatly disturbed by it. It was unbearable for her to witness. Melissa's letter of resignation describes Strycker hostile, harassing, and disdainful conduct toward female employees. The hostility and tension in the office was unbearable for Melissa. *See* Melissa's EEOC Charge Letter, Ex. 1.

157.    Strycker used profanity in referring to other female employees. For example, Strycker referred to assistant superintendent females as "F***ing stupid or idiots as set forth above.

158.    Strycker referred to Melissa and another employee as "f***ing government employees and mentalities." *Id.* at 4 – 5.

159.    As a result of the toxic work environment, Melissa experienced blood pressure issues, headaches, insomnia, anxiety, stress, fear, and crying spells.

160.    Strycker's Board-sanctioned reign of terror caused Melissa to lose benefits with PERS, *which would have vested just weeks after her constructive discharge/termination*.

### IV.    EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

161.    Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) regarding Defendants' discriminatory conduct on November 24, 2021. Ex. 1.

162.    The EEOC issued a Notice of Right to Sue letter, which Melissa received on June 16, 2022. A copy of the Notice of Right to Sue letter is attached hereto as Exhibit "3."

163.    Since Melissa filed her EEOC charge regarding Defendants' age discrimination (in addition to her gender, and religious discrimination and retaliation and hostile environment claims) sixty (60) days or more have elapsed.

## V.     PLAINTIFF'S CLAIMS

## COUNT I

### A.     CONSTRUCTIVE DISCHARGE

164.     Plaintiff adopts and incorporates all statements and the factual background above as if fully copied herein.

165.     Strycker, with the District/Board's approval and authority, discriminated against Melissa based on her religion, gender, and age.

166.     Strycker, with the District/Board's approval and authority, made working conditions become so intolerable that a reasonable person in Melissa's position would have felt compelled to resign.

167.     As a result of Strycker's actions and the District/Board's actions and inactions, Melissa tendered her letter of resignation on June 20, 2021.

168.     Melissa suffered under Strycker's Board-sanctioned reign of terror from January 2020 until July 2, 2021, when she was forced to resign due to the retaliatory, harassing, hostile and discriminatory work environment created and perpetuated by Superintendent Strycker. *See* Letter of Resignation from Melissa to the Board, Ex. 1 ("A") [Bates No. 10 – 14].

## COUNT II

### B.     GENDER AND RELIGIOUS DISCRIMINATION AND VIOLATION OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION AND DUE PROCESS

169.     Plaintiff adopts and incorporates all statements and the factual background above as if fully copied herein.

170.     As a proximate consequence of Defendants' discriminatory conduct set forth above and pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*; and the Equal Protection Clause of the Fourteenth Amendment, Plaintiff's constitutional rights have been violated.

171. Defendants have wrongfully acted, arbitrarily and capriciously, but intentionally, to deny Plaintiff her statutory and constitutional protections against gender and religious discrimination; a harassing, abusive, and hostile environment; and retaliation. The foregoing facts and legal references support these contentions.

172. Further, Plaintiff's equal protection constitutional rights have been abridged. Defendants arbitrarily treated Plaintiff and other females differently than their younger male counterparts, older employees differently than their younger counterparts, and Baptists and people of faith differently.

173. Strycker, with the District's approval, wrongfully treated Plaintiff and other Baptists and people of faith, females, and older employees in the workplace unfavorably.

174. Consequently, Plaintiff has been damaged as a proximate result of the foregoing actions of Defendants.

175. Defendants used their power, authority, and influence, as moving forces to harm Plaintiff as described above.

176. Defendants either effected the definitively described actions above or knew of and ratified them.

177. Plaintiff asked that Defendants rectify and remedy the wrongs perpetrated against her, but Defendants refused. Defendants acted with deliberate indifference to Plaintiffs' equal protection rights. Defendants had a custom that constituted deliberate indifference to constitutional rights regarding religion, gender, and age.

178. Plaintiff has been left to suffer the consequences of Defendants' misconduct.

## COUNT III

**C.     HOSTILE WORK ENVIRONMENT**

179.    Plaintiff adopts and incorporates all statements and the factual background above as if fully copied herein.

180.    This claim is brought against Defendants for creating and perpetuating a hostile environment under the Civil Rights Act of 1964, Title 42 U.S.C. § 1983, Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discriminationin Employment Act (ADEA) of 1967 § 2, 29 U.S.C. § 621 *et seq*.

181.    Plaintiff is a person of faith belonging to the Baptist Christian denomination, is a female, and is over the age of forty (40).

182.    From January 2020 until her constructive discharge on or about July 2, 2021, Plaintiff was subjected to unwelcomed hostility and harassment because of her religious beliefs, gender, and age.

183.    Strycker's hostility and harassment was based on Melissa's religion, gender, and age. The hostile and harassing comments about Melissa's religion, gender, and age were routine and continued throughout her employment. The District/Board had knowledge of the hostility and harassment. Yet, instead of taking action to prevent it, Board members encouraged Melissa to find employment elsewhere. *See* Melissa's EEOC Charge Letter at 7 – 8, Ex. 1 [Bates No. 7 – 8].

184.    As a result of Strycker's Board-sanctioned hostility and harassment, Melissa was constructively discharged and terminated.

## COUNT IV

**D.      RETALIATON**

185.      Plaintiff adopts and incorporates all statements and the factual background above as if fully copied herein.

186.      This claim is brought against Defendants for retaliation under the Civil Rights Act of 1964, Title 42 U.S.C. § 1983, Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA) of 1967 § 15, 29 U.S.C. § 621 *et seq.*, in particularly § 633a(a).

187.      Plaintiff engaged in a statutorily protected activity under Title VII when she opposed, reported, and spoke out against Defendants' discriminatory conduct.

188.      Action was taken by the District and Strycker against Melissa that a reasonable employee would consider materially adverse. After Melissa complained to the Board and others regarding Defendants' discriminatory conduct, Strycker's discriminatory conduct only intensified and continued. As set forth above, Strycker's demeaning and profane language to and about Melissa and others based on their religion and gender (female) intensified and increased as set forth above. His treatment of people of faith, females, and older employees likewise intensified and increased as set forth above. Such actions would have reasonably dissuaded a reasonable employee from making or supporting a charge of discrimination. *See* Melissa's EEOC Charge Letter at 7 – 8, Ex. 1 [Bates No. 7 – 8].

189.      Because Melissa opposed, reported, and spoke out against Defendants' discriminatory conduct and Defendants' resulting intense and increased discrimination, Melissa was constructively discharged and terminated. *See* Melissa's EEOC Charge Letter at 7 – 8, Ex. 1 [Bates No. 7 – 8].

## COUNT V

**E.     VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREE SPEECH.**

190.    Plaintiff adopts and incorporates all statements and the factual background above as if fully copied herein.

191.    This claim is brought against Defendants for their violations of Melissa's First Amendment right to free speech under the Civil Rights Act of 1964, particularly Title 42 U.S.C. § 1983, and the Age Discrimination in Employment Act (ADEA) of 1967 § 15, 29 U.S.C. § 621 *et seq.*, in particularly § 633a(a).

192.    At all times herein, the District, Board members, and Strycker, were acting under the color of state law, and their actions and omissions caused Melissa to be deprived of her right to free speech in violation of the First Amendment to the U.S. Constitution.

193.    Defendants violated Melissa's First Amendment right to free speech, retaliated against her for exercising her right to free speech in violation of the First Amendment.

194.    Melissa spoke out as a citizen against Strycker's discriminatory conduct toward her, Baptists and/or people of faith, female employees, and older employees.

195.    Melissa also spoke out as a citizen against Strycker and the District/Board's violations of the governor's mandate and the state's guidelines regarding Covid.

196.    Melissa's statements regarding Strycker's Board-sanctioned religious, age, and gender discrimination are matters of public concern.

197.    Likewise, Melissa's statements regarding Strycker and the District's violations of the governor's mandate and the state's guidelines regarding Covid are matters of public concern.

198.    Melissa's speech outweighed the District's interest in promoting efficiency.

199.    As a result of Melissa's statements of public concern made as a citizen, the District and Strycker subjected Melissa to an increased discriminatory, retaliatory, hostile, and harassing environment.

200.    Defendants, overtly, actively, and/or by ratification, and/or by and through their agents and representatives, retaliated against Plaintiff for speaking out as citizen on matters of public concern—religious, age, and gender discrimination and public health. Defendants countenanced and/or ratified this conduct.

201.    Defendants violated Melissa's First Amendment right to free speech. As a direct result of Defendants' wrongful conduct, Melissa suffered injury. Therefore, all Defendants are liable to Melissa for her resulting injuries as set forth herein.

## COUNT IV

**F.      CONSPIRACY UNDER TITLE 42 U.S.C. §§ 1985(3) AND 1986**

202.    Plaintiff adopts and incorporates all statements and the factual background above as if fully copied herein.

203.    This claim is brought under the Civil Rights Act, particularly Title 42 U.S.C. §§ 1983, 1985, and 1986 against all Defendants and or other unknown individuals and/or entities to be named but now are listed as John and Jane Does 1 through 10 and Unknown Entities 1 through 10.

204.    Section 1985(3) prohibits conspiracies for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the law. The discriminatory animus behind Defendants' 1985 violation was based on Melissa's gender, age, and religion, protected classes of persons.

205.   Strycker, with the Board's knowledge and approval, created and perpetuated a hostile and discriminatory work environment for Melissa.

206.   Strycker and the District/Board intentionally created and/or knowingly permitted such intolerable working conditions that forced Melissa to resign.

207.   Melissa reasonably believed that she had no choice but to resign.

208.   Defendants participated in the conspiratorial scheme, and as a direct result of Defendants' conspiratorial scheme, Melissa suffered injury. Therefore, all Defendants are liable to Melissa for her resulting injuries as set forth herein.

209.   Further, in violation of Title 42 U.S. C. § 1986, Defendants had knowledge of the wrongs conspired to be done, about to be done, and were done to Melissa. Defendants had the power to prevent or aid in preventing the wrongs done to Melissa as set forth above. However, Defendants neglected or refused to do so and are thus liable to Melissa for her injuries.

## XI.   DAMAGES

210.   As a result of Strycker's and the Board's discriminatory, retaliatory, and hostile work environment, Melissa had and continues to have insomnia, high blood pressure, crying spells, anxiety, and headaches.

211.   Melissa has been and is receiving healthcare as a result and has been placed on medication for anxiety and depression as a proximate result of the Board's and Strycker's wrongful conduct.

212.   As a result of the constructive discharge, Melissa lost her retirement under PERS, *which would have vested just weeks after her constructive discharge*.

213.   Strycker and the District acted under the color of law independently and/or in concert with each other as set forth above in causing injury to Melissa.

214.   As a direct and proximate result of Defendants' wrongful conduct, Melissa suffered and continues to suffer actual, economic, and compensatory damages including, but not limited to, economic losses; severe emotional distress and mental anguish; anxiety; worry; damage to reputation; healthcare expenses; violations of her constitutionally protected rights under federal law; and reasonable attorney's fees under 42 U.S.C. § 1988(b), etc., for all of which Melissa is entitled to be compensated.

## XII.    Relief Sought

215.   WHEREFORE, PREMISES CONSIDERED, Plaintiff, Melissa N. Rayborn, respectfully requests the following relief:

a.    An appropriate amount of compensatory and actual damages that a jury deems appropriate. Plaintiff submits that this amount is in excess of the jurisdictional limits;

b.    An appropriate amount of punitive damages that a jury deems appropriate;

c.    Pre-judgment and post judgment interest and all equitable relief to which Plaintiff is entitled;

d.    Plaintiff asks for all appropriate relief to include attorney fees that Title VII allows;

e.    Plaintiff also asks for all appropriate attorneys' fees that may be allowed by law; and

f.    If Plaintiff has asked for inappropriate relief, she asks for all relief she is entitled in law and equity and that is just and proper, including all costs of this action.

## VII.   Exhibits

The following exhibits are attached:

**Exhibit 1**    Charge Letter from Melissa to EEOC (Nov. 24, 2021) and attachments:

A.    Letter of Resignation from Melissa to the Board (June 20, 2021) [Bates No. 10 – 14].

B.    County Office Staff Meeting notes re Strycker's repeated use of profane, insulting, and offensive language [Bates No. 15 – 16].

C.      Performance Evaluation of Melissa (Jan. 4, 2021) [Bates No. 17]

D.      Text Messages between Melissa and Board Member Amy Dobson [Bates No. 18 – 19]

E.      Text Message from Board Member Glenn Dickerson [Bates No. 21]

F.      Text Message between Melissa and Christy LeBatard, Associate Human Resources Director [Bates No. 22 – 29]

G.      Text Message between Melissa and McCool, Human Resources Director [Bates No. 30 – 48]

H.      Mississippi Educator Code of Ethics/Standards of Conduct [Bates No. 49 – 50]; District Policy GAAA re Equal Opportunity Employment [Bates No. 51]; District Policy GABA re Mississippi Educator Code of Ethics and Standards of Conduct Code [Bates No. 51 – 57]; Jackson County School District Contract for Employment of Superintendent (eff. Jan 1, 2020) [Bates No. 58 – 65].

**Exhibit 2**      Affidavit of Melissa Rayborn (Oct. 1, 2021)

**Exhibit 3**      EEOC Notice of Right to Sue (June 16, 2022)

**Exhibit 4**      Audio Recording of Strycker

**Dated: September 13, 2022.**

Respectfully Submitted,

**Melissa N. Rayborn, Plaintiff**
By her Attorneys,
McRae Law Firm, PLLC

By:      *s/ Chuck McRae*
Chuck McRae

Chuck R. McRae, MSB # 2804
Annette Bulger Mathis, MSB # 101237
McRae Law Firm, PLLC
416 E. Amite Street
Jackson, MS 39201
Office: 601.944.1008
chuck@mcraelaw.net
annette@mcraelaw.net

STATE OF MISSISSIPPI

COUNTY OF _Jackson_

## VERIFICATION

Before me, the undersigned notary, on this day personally appeared MELISSA N. RAYBORN, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified: "My name is MELISSA N. RAYBORN. I have read the Complaint for Employment Discrimination. The facts stated in it are within my personal knowledge and are true and correct and certain facts are based upon information and belief."

Melissa N. Rayborn

SWORN TO and SUBSCRIBED before me by MELISSA N. RAYBORN on September 13, 2022.

(seal)

Notary Public in and for the
State of Mississippi

STATE OF MISSISSIPPI
MICHELLE TOMES BRYAN
NOTARY PUBLIC
ID No. 125512
Commission Expires
September 24, 2022
JACKSON COUNTY